John P. Gualtieri, P. J.
This is a claim for breach Of contract and for damages resulting from a contract dated May 9, 1955, between the claimant and the New York State Thruway Authority for the construction at Sloatsburg, Eockland County, of a Super “A” gas station and restaurant and a utility building on the easterly side of the Thruw'ay; a type “ CM” gas station and restaurant on the westerly side of the Thruway; and a pedestrian bridge over the Thruway connecting the two sites.
The claimant’s contract called for the construction of the building and structures; Hoyle Construction Co., Inc., had the heating contract; Jeb Electrical Co., the electrical contract; Novak and Company had the contracts for the sewerage lines and for the installation of plumbing; and Union Building and Construction Co., Inc., contracted to do the site work, grading, paving and other work of a similar character.
Claimant seeks damages in the sum of $199,377.06 broken down as follows: (a) $50,882.24 for extra rock excavation ($6,784 of this amount was allowed by the Authority in its final estimate and is to be deducted from any award made for this item); (b) $14,403.84 for the cost and expense of hauling water to the contract site; (c) $5,166.34 for pumping and cleaning of excavation on the * ‘ AA ’ ’ site because of interference with the claimant’s operations by the site contractor, the Union Building Company; (d) $31,685.46 claimed to be due because it was obliged to extend its time of performance to 26 months instead of the 11-month period contemplated in the contract; (e) $6,942 damages claimed to be due by reason of the fact that the Authority interfered with the claimant’s work by allowing the site contractor on the job too early in the construe *220 tion schedule; (f) $10,460.80 interest on $79,720.38 which the Authority conceded to he due the claimant in its final estimate and which it is alleged was not tendered until March 16, 1960; (g) $6,900 claimed by reason of the Authority’s refusal to allow the claimant to correct its total bid resulting from what it claims to have been a mathematical error in addition.
Items (a), (b) and (c) of the claim totalling $70,452.42 will be considered together because the court feels that the same legal principles will control the result as to these three items.
Certain provisions of the contract should be mentioned at this point:
Article 12, paragraph 48 provides as follows: “The State Architect of the Department of Public Works shall have supervision and direction of the work ’ ’.
Article 12, paragraph 49: “ Should any portion of the drawings or specifications be obscure or in dispute, they shall be referred to the State Architect and he shall decide as to the true meaning and intent.”
Article 12, paragraph 50: “ Should any disagreement or difference arise on any point concerning the character, acceptability or nature of the several kinds of work or materials * * * the decision of the State Architect shall be final and binding upon all parties to the contract.” (Emphasis ours.)
“ The State Architect shall decide all matters relating to the execution and progress of the work and his decision thereon shall be final.” (Emphasis ours.)
Article 4 under the heading “ principles ” appear the following provisions:
“Whenever the word ‘State’ or ‘Owner’ appears in the Proposal, the Agreement, the General Conditions, the drawings, the Specifications or any addenda or amendments to the foregoing, it shall be understood to refer to the New York State Thruway Authority.
“Wherever the words ‘ Architect ’, ‘ State Architect ’, ‘ Department of Public Works ’, ‘ Engineer ’, ‘ Superintendent of Public Works ’ or ‘ Division of Construction ’ appear in such documents or drawings, they shall be understood to refer to the firm of ‘ Eggers and Higgins with offices at 100 E. 42nd St., New York 17, N. Y.’ After atoard of the Contract, a,ll — supervision — and all other matters encountered during the course of the contract which would normally be referred to or performed by the State Architect will, instead be directed to and performed by said firm of Eggers and Higgins.” (Emphasis ours.)
*221 Article 29, paragraph 129 provides as follows: “ Orders on Contract shall enumerate the work to be performed.” (Emphasis ours.)
It also provides that: “ If the nature of the work is such that an Order on Contract as above cannot be issued until the work has been advanced sufficiently to obtain exact quantities, said work will be authorized in writing by the State Architect, with the accompanying statement that an Order on Contract will be issued when the necessary information is at hand.”
Article 29, paragraph 129 further provides as follows: “Except as provided in the above paragraph no change shall be made unless in pursuance of an Order on Contract.”
A proper application of these contractual provisions will aid in the disposition of damage items (a), (b) and (c) enumerated above.
Item (a) for $50,882.24 is for extra rock excavation. A controversy developed during the course of construction because of language ambiguity, as to whether or not this work was to be done by the claimant or by the site contractor. After much discussion, written and oral, the Architect determined that this was part of the claimant’s contract and after the work had been completed issued an order on contract to the claimant for said sum of $50,882.24; that the State Architect closely followed the quantity of excavation being performed by the claimant and the amount justly due it for this item is indicated by the fact that the claimant originally put in a requisition for $52,912 for this item and later because the Architect’s computations of quantities were somewhat less, the claimant accepted the Architect’s figures and the amount was adjusted to the amount put in the order on contract by the Architect, namely, $50,882.24.
Item (b) was a claim for extra compensation in the sum of $14,403.84 for hauling water to the contract site. The contract provided that at a specified time water for the job would be provided by the plumbing contractor which obligation the plumbing contractor totally failed to fulfill. In order not to interrupt the progress of the work, the Authority’s Architect authorized the claimant to obtain its own water supply for extra compensation. This arrangement was confirmed by letter of the claimant. After the cost of this extra work was determined the Architect prepared an order on contract for said sum of $14,403.84.
That the Authority is not seriously contesting the propriety of this item is demonstrated by the fact that it has withheld this *222 am mint, from moneys due the plumbing contractor indicating that the cost of this extra work for hauling water which should have been done by the plumbing contractor will be charged back to the plumbing contractor if the Authority is obliged to pay it to the claimant.
Item (c) in the amount of $5,166.34 is claimed to be due the claimant for pumping and cleaning of excavations resulting from the fact that the Authority permitted the site contractor to commence its operations too soon. The site contractor brought heavy equipment in the area where the claimant was working. It did heavy blasting resulting in the disruption of watercourses, flooding the foundations being erected by the claimant and forcing the claimant to almost continuously pump water and clean debris while its work was in progress.
There Avas much discussion between claimant and the Architect on this subject, written and oral. Again when the amount claimed to have been expended for this additional work was ascertained, the Architect issued an order on contract for the payment to the claimant of said sum of $5,166.34.
While the Authority mildly contested the accuracy of the amounts claimed in items (a), (b) and (c) totalling $63,668.42 (the $6,784 allowed in the Authority’s final estimate has been deducted from this total) not by direct evidence but principally by cross-examination of the claimant’s witnesses, the Authority’s defense to these items is based upon the technical objection that its OAVtt Architect was without authority to issue the orders on contract for these items on the ground that the Architect exceeded the authority granted to him by the contract provisions recited above.
It is the contention of the Authority that with reference to each of these items of damage its Architect had power to issue such orders only on work a to be performed that these words strictly construed give the agent authority to issue orders before the work is commenced and not afterwards. Much reliance is placed by the Authority on,,the ease of Langley v. Rouss (185 N. Y. 201) which holds that an agent cannot enlarge his own powers by waiving the limitations which his principal places upon him. Even if it were necessary to do so we would be inclined to hold that this decision would not be controlling in the case at bar. As to each of the items the evidence is that the Architect or his representatives were daily and continually on the job. When these situations arose in the course of construction it appears that the Architect kept constant surveillance of the claimant’s daily operations so that the limits of the *223 Authority’s obligation to pay for this extra work were fully safeguarded.
Under the circumstances surrounding these three transactions, items (a), (b) and (c), it would be distinctly unfair to a contractor to deprive him of just compensation for work performed by so strict and technical an interpretation relied upon by the Authority.
It is inferred by the argument of the Attorney-General that this provision should be strictly construed to protect the Authority against an unscrupulous or dishonest architect, its own agent selected by it and paid by it. There is no evidence of dishonesty in this record or fraudulent conduct on the part of anyone. Where such impropriety appears the guilty parties to such a conspiracy would be subjected to the drastic criminal and civil remedies which such conduct would entail. This court cannot and will not relieve the Authority of a just debt because of such a possibility which does not appear here.
It is suggested by the Attorney-General that an underlying reason for strict adherence to the provisions of the contract requiring an “ Order on Contract” to be executed before the additional work is performed is that it gives the owner or principal an opportunity to check on the situation in advance. However, in view of the fact that the provisions of the contract provide that the decision of the architect ‘1 shall be final ’ ’ on such matters and there being no provision enabling the principal or owner to overrule its agent, the Authority would be in no position to question the propriety or accuracy of the items allowed by the architect, absent fraud or collusion, of which we find none in this case.
There is another ground upon which the Authority is precluded in this case from insisting on a strict compliance with the language of the contract. True, an agent cannot enlarge upon the powers conferred upon him by his own acts.
However, a party to a contract may be precluded from insisting on strict compliance by conduct amounting to a waiver or estoppel. (Kelly v. St. Michael’s R. C. Church, 148 App. Div. 767.)
The waiver may be in writing or by conduct which estops the owner from insisting upon strict compliance with a contractual provision. (Traitel Marble Co. v. Brown Bros., 159 App. Div. 485; National Bank v. City of Watervliet, 97 Misc. 121.) In the course of this job there were 31 such orders on contract issued by the Authority’s Architect for additional work which orders were put out after the work was already in progress or com *224 pletecl. The Authority acquiesced in and accepted all of them as demonstrated by the final estimate except the three which are in controversy here. A principal or owner cannot under these circumstances be heard to urge strict compliance as to these three items of the claim when by its own conduct and actions during the course of this very job it permitted the claimant to justifiably feel that the procedure being followed in the issuance of these orders by the Architect was acquiesced in or acceptable to the Authority.
Item (d) is a claim for $31,685.46 based upon the fact that, because of the Authority’s conduct, it took the claimant 26 months within which to complete the job instead of the 11-month period called for by the contract. It is the claimant’s contention that this delay was occasioned by the Authority’s failure to properly co-ordinate the work of the various contractors and by its failure to insist upon reasonable and timely performance by the other contractors so as not to unduly impede the operations of the claimant.
The court is satisfied from the evidence that this delay was caused by the failure of the Authority to carry out its responsibilities under the contract.
In the first place the contract provided that the site contract would not be let and the site contractor would not be permitted to start its work until the claimant had constructed its exterior walls and commenced interior work. Because the site contractor was allowed to start its work too soon it disrupted and delayed claimant’s operations and created havoc with the orderly fulfillment of its contract.
The same is true with reference to the plumbing contractor who failed to comply with its performance schedule throughout the whole life of the contract. It failed to follow up claimant’s work with the necessary sleeves for piping and wall cavities and general plumbing work. Repeated complaints were made by the claimant to no avail and the plumbing contractor’s noncompliance with its contract imposed upon the claimant continual slowdowns in its work at substantial expense to it.
Likewise, the electrical contractor was required to install wiring and other equipment necessary for the contract site and temporary telephone service. In a job as extensive as this it is essential to afford easy communication by the claimant to and from various locations on the job. This contractor delayed its performance for a period of nine months. Again, the claimant was subjected to additional expense and delays which impeded the proper performance of its contract.
*225 .It was the Authority’s obligation to properly co-ordinate the work of the various contractors and to furnish the claimant a site on which to carry on its work with customary economical methods and without unreasonable interferences or obstructions by either the Authority or other contractors on the job. (Baker Co. v. State of New York, 267 App. Div. 712; Rusciano & Sons Corp. v. Sate of New York, 278 App. Div. 999; Johnson v. State of New York, 5 A D 2d 919; Smith & Sons Constr. Co. v. State of New York, 266 App. Div. 886.)
The same principles apply in connection with item (e) above, the claim for $6,942 for damages suffered by the claimant because the site contractor was allowed to come onto the site too early. This site contractor destroyed a diversion channel which the claimant had constructed to avoid floods damaging the work in progress. The site contractor’s blasting and other operations resulted in damage to the forms and walls theretofore constructed by the claimant forcing the claimant to repair and duplicate the work. Also, by reason of the site contractor’s interference the claimant was deprived of the use of a ramp which it had erected for the hauling of materials into the basement of the structure requiring the materials to be transported by hand instead of by equipment at additional cost and expense to the claimant.
The Authority makes a point of the fact that the contracts between it and the site contractor, the plumbing contractor and the electrical contractor are not in evidence in this case and that therefore the court cannot consider the provisions of these contracts as affecting the obligation of the Authority to compel these other contractors to properly perform their work. We hold that the obligations devolving upon the Authority arise out of its failure to comply with its duties outlined in or implied from its contract with the claimant without invoking any provision in the contracts between the Authority and other contractors. In other words, the Authority’s obligation to coordinate the work of this claimant and other contractors and not to permit other contractors to obstruct or delay the claimant in the proper performance of its work are implicit in the contractual relationship between this claimant and the Authority.
Items (d) and (e) total $38,627.46 which is the amount sought by the claimant by reason of its work having been unduly obstructed. However, the proof of the manner in which this figure was arrived at is not wholly satisfactory. Many of the 16 items in Exhibit 44 giving a breakdown of the damages are estimates and not based upon actual figures. The claimant’s witnesses were unable to show from their payroll or other *226 records the manner in which the various items were arrived at. There is indication that some of the items listed in Exhibit 44 very likely are duplications of other items claimed in other categories of the claimant’s claim. In various items the claimant lists percentages for overhead and profit on estimates rather than on actual costs which cannot be allowed. (Rusciano & Son Corp. v. State of New York, supra.)
Although the court is convinced that the claimant is entitled to damages for the items represented by (d) and (e) above it cannot accept the claimant’s figures for the reasons stated and awards to the claimant for these two items the sum of $22,000 which it considers fair and reasonable compensation for the damages and expenses incurred by the claimant in this connection. (Arc Eng. Corp. v. State of New York, 40 N. Y. S. 2d 354, affd. 267 App. Div. 797.)
Another portion of the claim, (item f enumerated above) is for $10,460.80, representing interest the claimant lost on the $79,720.38 which the Authority conceded to be due in its final estimate rendered March 16, 1960. This portion of the claim is disallowed. Although the Authority was in possession and occupancy on July 4, 1957, it appears from the evidence that because of the complications and problems arising out of the performance of the various phases of this project that there were extensive negotiations and conferences in an endeavor to reconcile the various differences. In fact, the claimant itself participated in a meeting as late as December 16, 1959, at which the issues were still being discussed. The final estimate was prepared and submitted within four months thereafter, namely, March 16, 1960.
Paragraphs 99 and 100 of article 24 of the contract provide that a final certificate will not be issued until all claims are considered and disposed of and that the date of the final certificate will constitute acceptance of the work. Under the circumstances therefore the claimant was not entitled to payment until these contractual provisions had been complied with and thus would be entitled to no interest thereon until that time.
The final item (g above), a claim for $6,900 must also be disallowed. At the time that the bids were opened in connection with the contract involved in this litigation the claimant put in its total bid of $609,000. The breakdown of its proposal consisted of three items of $415,100, $111,800 and $89,000 which three items actually total $615,900. The claimant claims that it intended its bid to be the aggregate amount of $615,900 but in error the $609,000 figure was given instead. When the bids were opened the claimant was aware of this error and was *227 informed that if it were unwilling to stand by its bid of $609,000 that the contract would be awarded to the next lowest bidder. Bather than lose the contract the claimant acquiesced and signed the contract for the $609,000 figure. This was a voluntary act on its part and it agreed to perform the contract for this amount. It cannot now be heard to say that the figure should be changed. The Authority has as much right to insist that the claimant perform its contract according to its terms as the claimant has to ask the Authority to abide by the other provisions of the contract for breach of which this claim is predicated.
An award is made to the claimant against the New York State Thruway Authority in the total sum of $165,388.80 broken down as follows: (1) $79,720.38, the amount conceded to be due in the Authority’s final estimate; (2) $44,098.24 for additional rock excavation in accordance with Order on Contract No. 9; (3) $14,403.84 for Order on Contract No. 16, hauling water; (4) $5,166.34 for Order on Contract No. 17, pumping and cleaning of excavation; (5) $22,000, damages by reason of the delays and interferences with claimant’s progress in the performance of its contract, on which total amount of $165,388.80, interest is allowed from March 16, 1960, to the date of entry of judgment herein.
The State of New York was not a party to this contract and the claim, as against it, is hereby dismissed.