**LURZER GMBH, Plaintiff,**

v.

**AMERICAN SHOWCASE, INC. and the One Club for art & Copy, Inc., Defendants.**

**No. 97 Civ. 6576(JSR).**

United States District Court, S.D. New York.

Sept. 1, 1998.

Bernice K. Leber, Arent, Fox, Kintner, Plotkin & Kahn, New York City, for Plaintiff.

Richard C. Seltzer, Kaye, Scholar, Fierman, Hays & Handler, New York, NY, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff Lurzer GMBH ("Lurzer") sues defendants American Showcase, Inc. ("American") and The One Club For Art & Copy, Inc. ("One Club") under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, and various provisions of New York State law, alleging, in 13 counts, claims of trademark infringement and dilution, false advertising, false designation of origin, unfair competition, fraud, breach of contract, and the like. Defendant American counterclaims, alleging, in six counts, various claims of breach of contract and tortious interference with contract. Discovery being completed, American seeks summary judgment against Lurzer on all but Counts 8–10 of the Amended Complaint, and summary judgment in American's favor on its First and Sixth Counterclaims. Substantially for the following reasons, the Court grants American's motion as to Counts 11 and 12 and as to the First Counterclaim, and denies the motion in all other respects.[1]

The pertinent and (except as otherwise indicated) undisputed facts are as follows. In late 1983, Walter Lurzer, a resident of Germany and the sole owner of plaintiff Lurzer GMBH, a German company, originated *Lurzer's International Archive ("Archive")*, a German-language magazine directed to members of the advertising industry. In the fall of 1984, Mr. Lurzer mailed copies of the magazine to certain members of the advertising industry in the United States for their review and to solicit advertisements for publication in the magazine. Around that same time, Mr.

Lurzer discussed with Ira Shapiro, American's President, the possibility of having American distribute an English-language version of the magazine in the United States. According to Mr. Shapiro, Mr. Lurzer agreed that American would publish a United States edition of *Archive*. According to Mr. Lurzer, he agreed only to let American act as *Archive's* United States distributor.

Whatever the merits of this dispute, it is undisputed that late in 1984 American began selling an English-language version of *Archive* in the United States and that during 1985 and 1986 the parties attempted to negotiate a written agreement setting forth the terms of their relationship. While the parties again disagree as to what was said during those negotiations, it is undisputed that in August 1986, while these negotiations were ongoing, American, without notifying Lurzer, submitted to the U.S. Patent and Trademark Office ("PTO") an application for registration of the trademark "Archive." In support of that application Mr. Shapiro submitted a sworn declaration to the PTO affirming that "he believe[d] [American] to be the owner of the trademark [and] that to the best of his knowledge no other person, firm, corporation or association ha[d] the right to use said mark in commerce."

On March 14, 1987, while American's application for trademark registration was pending, Lurzer and American finally reached and executed a written agreement (the "1987 Agreement") that "grant[ed] to [American] the exclusive right to publish the American edition of the [*Archive*] Magazine and to sell and obtain paid advertising for the American edition of the Magazine in the United States." The contract obligated Lurzer to produce six issues of the magazine per year, and obligated American to purchase from Lurzer a specified number of copies of each issue for distribution in the United States.

---

1. Except as to the First Counterclaim (on which the Court reserved decision), these rulings were telephonically conveyed to the parties on July 13, 1998.

American also agreed "during the term of [the] Contract not to publish, distribute or sell [any other] magazine of the same or similar concept as the Magazine." The 1987 Agreement was to run "for an initial term of five (5) years beginning January 1rst [sic], 1986, and [to] be automatically extended each and every five (5) year period thereafter for an unlimited time" unless either party defaulted.

Although the 1987 Agreement was silent regarding trademark rights, on March 24, 1987, ten days after the 1987 Agreement was executed, the PTO issued to American trademark registration No. 1,433,848 for the mark "Archive."

Over the course of the next five years, Lurzer became concerned that the high cost of producing the English-language version of the magazine was exceeding the revenues it derived therefrom, while American, in turn, became disenchanted with a limitation to which the parties had agreed (subsequent to the execution of the 1987 Agreement) that limited American's sale of *Archive* advertising to 53 pages per issue. Accordingly, in June 1992, the parties executed a letter agreement amending the 1987 Agreement (the "1992 Amendment"),[2] pursuant to which American agreed to assume certain additional costs in connection with production of the magazine and Lurzer agreed that American could sell "up to 70 pages [of advertising] in all future issues of Archive, beginning with Vol. 4, 1992." The 1992 Amendment further provided that "there w[ould] be no further recalculations or interpretations of any kind until June 30 1997 that will result in [Walter Lurzer] or [Lurzer] increasing any costs to [American] beyond those" set forth in the letter. Finally, the 1992 Amendment reaffirmed that the parties' contract was a "continuing obligation" that, while subject to "review[ ] on a five-year

basis to adjust certain terms, [could] only be terminated pursuant to the terms outlined in paragraph 9 of the March 14, 1987 contract."

On November 17, 1992, Mr. Shapiro, on behalf of American, filed an affidavit with the PTO pursuant to 15 U.S.C. § 1065(3) stating, among other things, that American had continuously used the "Archive" mark in commerce for five years since its registration, that he "believe[d] [American] to be the owner of" the mark, and that "to the best of [his] knowledge and belief no other person, firm, corporation, or association [had] the right to use the . . . mark in commerce." At the time, Lurzer still was unaware that American had secured a registration for the "Archive" mark.

In 1994, American began distribution of a magazine entitled *KliK! Photography Showcase ("KliK!"),* and as part of that endeavor, offered discounts on advertising rates in *Archive* magazine to those who also agreed to place advertisements in *KliK!* This engendered disputes between Lurzer and American that eventually broadened to also include Lurzer's challenge to American's participation with One Club in distribution of a magazine entitled *One.* In June 1997 Lurzer, while investigating American's use of the "Archive" name in connection with *One.,* discovered that American had obtained registration of the "Archive" trademark, and filed a proceeding in the PTO to cancel that registration as fraudulent. Lurzer also notified American that in subsequent issues of the English-language magazine Lurzer would not print more than 53 pages of advertising obtained by American. American responded on August 12, 1997 by filing a demand for arbitration with respect to Lurzer's refusal to continue printing 70 pages of advertising.[3] On September 5,

2. The 1992 agreement consisted of a June 12, 1992 letter from Mr. Shapiro to Mr. Lurzer, and a June 13, 1992 letter from Mr. Shapiro to Georg Eckardt, a Lurzer employee.

3. After this Court denied Lurzer's subsequent motion to dismiss or stay the arbitration and granted in part and denied in part American's motion to stay this action pending arbitration, *see* Memorandum Order, December 24, 1997,

1997 Lurzer responded in turn by commencing this action.

■ Against this factual background, summary judgment must be denied with respect to the trademark and unfair competition claims set forth in Counts One, Two, Three, Four, Five, Six and Thirteen of Lurzer's Amended Complaint and in American's Sixth Counterclaim for a declaratory judgment regarding its rights to the "Archive" mark, because triable issues of fact exist as to who was the first user of the "Archive" mark in the United States. Although American was issued a trademark registration in 1987 and filed the requisite affidavit of continuous use in 1992, its right to use the mark is not incontestable to the extent that such use infringes a valid common-law trademark right acquired by plaintiff under state law prior to American's registration of the mark. *See* 15 U.S.C. § 1065 (right to use not incontestable "to the extent ... the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration ... of such registered mark"); *see also 815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.,* 842 F.2d 643, 646 (2d Cir. 1988) ("[I]f a party has acquired common-law trademark rights continuing since before the publication of the federal registration, then to that extent the registration will not be incontestable.") (quoting *Wrist–Rocket Mfg. Co., Inc. v. Saunders Archery Co.,* 578 F.2d 727, 731 (8th Cir.1978)); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.* 717 F.Supp. 96, 112–113 (S.D.N.Y.1989); *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,* 457 F.Supp. 1090, 1100 (S.D.N.Y.1978).

Here, no matter how the evidence is viewed, triable issues of material fact exist both as to whether Lurzer obtained common law trademark rights in the mark by using it in commerce before American's registration was issued, *see 815 Tonawanda Street Corp.,* 842 F.2d at 646–648, and as to whether American's use infringes any such common law rights. These disputed issues relate, *inter alia,* to the nature and extent of Lurzer's distribution of *Archive* in the United States prior to its dealings with American, and to the nature and extent of Lurzer's subsequent relationship with American. It is a jury issue, for example, whether Lurzer manufactured and controlled the content of the English-language version of *Archive,* with American merely serving as a distributor, *see Aini v. Sun Taiyang Co.,* 964 F.Supp. 762, 774 n. 14 (S.D.N.Y.1997), or whether, conversely, American in fact controlled the quality and content of the magazine so as to create its own trademark rights in the "Archive" mark. Accordingly, the scope of the incontestability of American's right to use the mark is also in issue.

■ Moreover, even were there no dispute as to the scope of incontestability of American's registration, and the registration therefore constituted "conclusive evidence," 15 U.S.C. § 1115(b), of the validity of American's registration of the mark and of its exclusive right to use the mark, triable issues of fact would still exist as to whether any of the defenses to incontestability provided in § 1115(b) apply, including, in particular, whether "the incontestable right to use the mark was obtained fraudulently," *id.* To be sure, under the six-year statute of limitations applicable to fraudulent registration claims in cases (such as this one) governed by New York law, *see Calzaturificio Rangoni v. United States Shoe Corp.,* 868 F.Supp. 1414, 1421 (S.D.N.Y.1994); N.Y.C.P.L.R. § 231(b), Lurzer's claim of fraud is time-barred insofar as it is premised on American's 1987 registration.[4] But no such time bar ap-

---

the parties withdrew all their claims before the arbitrator in favor of this proceeding.

4. Lurzer had constructive notice of American's registration in 1987, *see* 15 U.S.C. § 1072 ("[r]egistration of a mark on the principal register ... shall be constructive notice

plies to that defense insofar as it is premised on American's submissions to the PTO in 1992.

In that regard, despite the substantial burden that plaintiff will face at trial in establishing that Mr. Shapiro's statements, made upon belief or information and belief, were knowingly false, *see Orient Express Trading Co. Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988); *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F.Supp. 1339, 1353 (E.D.N.Y.1994); *Kemin Industries v. Watkins Products, Inc.*, 192 U.S.P.Q. 327, 329, 1976 WL 21132 (TTAB 1976), plaintiff at this stage has provided evidence sufficient to create a jury question on this issue. For example, plaintiff provided evidence that on at least two occasions, in 1989 and 1991, Mr. Shapiro sought from plaintiff a license for use by American of the name "Lurzer's Archive" in connection with certain products American wished to distribute. On the basis of this evidence and the remainder of the record, a reasonable factfinder could infer that Shapiro in fact believed, contrary to his representation to the PTO, that Lurzer, and not American, was the owner of rights to the "Archive" mark.

Accordingly, triable issue of fact exist regarding, among other things, (a) the extent of plaintiff's pre–1987 common law rights, if any, in the "Archive" mark, (b) whether American's use infringes any such common law rights, (c) the scope of the incontestability of American's right to use the mark, and (d) whether, if American's rights are incontestable in relevant respects, any defenses to incontestability apply, thus precluding summary judgment on both the Lanham Act claims and the state law trademark infringement and related claims.[5]

■ As for American's argument that Lurzer is not in any event entitled to recover money damages on the trademark causes of action because its evidence of consumer confusion is insufficient, *see Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir.1996), the Court finds, on the contrary, that the reports of Lurzer's expert, Jacob Jacoby (which the Court will consider for these purposes), when coupled with the other evidence taken most favorably to plaintiff, is sufficient to raise a triable issue of fact as to such confusion. Accordingly, plaintiff's claim for money damages remains for trial.

■ Summary judgment must also be denied as to Count Seven, which alleges that American breached the 1987 Agreement and its implied obligation thereunder of good faith and fair dealing. In respect to this claim, triable issues of material fact exist with respect to, *inter alia*, whether American's activities in connection with *One.* and *KliK!* magazines (e.g., using *Archive* subscriber and advertiser lists for *KliK!* and *One.* purposes, and offering discounts to *Archive* advertisers for advertising in *Klik!* and *One.*) violated American's

---

of the registrant's claim of ownership thereof"), and accordingly was required to assert any claim of fraud in connection with the registration by 1993. Under the plain language of the statute, Lurzer's claim that it did not have actual notice of such fraud until May 1997 is unavailing, as is its reliance in this regard on *Beauty Time, Inc. v. Vu Skin Systems, Inc.*, 118 F.3d 140 (3d Cir.1997). Although the Third Circuit in *Beauty Time* held that § 1072 on its face does not apply to the submission of affidavits five years after registration to establish incontestability, *see id.* at 149, it nowhere suggested that (contrary to the express language of § 1072) actual notice of a registration is required to commence the limitations period with respect to a claim that the registration was fraudulent.

**5.** "[T]he standards for trademark infringement are essentially the same under the Lanham Act, New York law and the common law." *Tri–Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 359 n. 18 (S.D.N.Y.1998). Similarly, "the standards for Section 43(a) claims of the Lanham Act and unfair competition claims under New York Law are almost indistinguishable." *Id.* at *23.

contractual obligation of good faith and fair dealing. For example, although Mr. Lurzer asserts that Lurzer, on behalf of *Archive*, developed the list of advertising agencies used by American in attracting subscribers and advertisers to *KliK!* and *One.*, American asserts that it developed the circulation and subscriber lists for all three magazines from its own lists of advertising agencies. Accordingly, triable issues of fact exist precluding summary judgment on Count Seven.

■ By contrast, summary judgment must be granted in favor of American as to Counts Eleven and Twelve, which allege, respectively, that American procured for its benefit and to Lurzer's detriment a "unilateral mistake" as to trademark ownership (Count 11), and that American fraudulently induced Lurzer to execute the 1987 Agreement by failing to disclose that it had filed an application to register the mark (Count 12). As to Count Eleven, Lurzer's counsel conceded at oral argument that the "unilateral mistake" claim alleged therein remains viable only to the extent that Lurzer proves that the mistake was procured by fraud, *see Nat'l Union Fire Ins. Co. v. Walton Ins. Ltd.*, 696 F.Supp. 897, 902 (S.D.N.Y.1988), and that, accordingly, the claim effectively merges into the fraud claim. The fraud claim, however, is time-barred as to representations or omissions made in connection with the negotiation of the 1987 contract, because an action to void a contract based on fraud "must be brought either within six years of the commission of the fraud, or within two years from the discovery of the fraud or from when the fraud could have been discovered with reasonable diligence," *Goldberg v. Manuf. Life Ins. Co.*, 242 A.D.2d 175, 672 N.Y.S.2d 39, 43 (1st Dep't 1998), and, as noted previously, plaintiff had constructive notice of American's claim of trademark rights in 1987, *see* 15 U.S.C. § 1072. For that reason, the "unilateral mistake" claim of Count Eleven, which relates only to the 1987 Agreement, must be dismissed as time-barred.

For like reasons, Count Twelve, which alleges fraudulent inducement of the 1987 Agreement, *see* Amended Complaint ¶ 116, must also be dismissed. Moreover, even assuming *arguendo* that, as plaintiff now suggests, Count Twelve should also be read to assert fraud in connection with the 1992 submission to the PTO, the claim must nonetheless be dismissed on the merits because there is no evidence that Lurzer in any way relied on the alleged misrepresentations contained in that submission. *See Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir.1998) ("[A] plaintiff does not establish the reliance element of fraud for purposes of ... New York law by showing only that a third party relied on a defendant's false statements.").

Finally, as to American's First Counterclaim (alleging breach of contract in the reduction back to 53 pages of advertising), summary judgment must be granted in favor of American. Although the 1992 Amendment to the 1987 Agreement requires Lurzer to accept up to 70 pages of paid advertising per issue, Lurzer has refused since June 1997 to print more than 53 pages in all future issues of the magazine. Lurzer's defense—that the 1992 Amendment, and more particularly the 70-page limit, expired on June 30, 1997—is contrary to the plain language of the 1992 Amendment itself, which states flatly that American can sell up to 70 pages "in all future issues of *Archive.*" The only explicit reference in the 1992 Amendment to June 30, 1997 is irrelevant, since it merely provides that "there will be no further recalculations or interpretations of any kind until June 30 1997 that will result in [Walter Lurzer] or [Lurzer] increasing any costs to [American] beyond those" set forth in the amendment itself. Further, the 1992 Amendment expressly provides that while it can "be reviewed on a five-year basis to adjust certain terms, ... [it can] only be terminated pursuant to the terms outlined in the [1987 Agreement]" itself, which continues indefinitely. Ac-

cordingly, American is entitled to summary judgment in its favor on its First Counterclaim.[6]

In sum, American's motion for summary judgment is granted as to Counts Eleven and Twelve of the Amended Complaint, denied as to Counts One, Two, Three, Four, Five, Six, Seven and Thirteen of the Amended Complaint, denied as to American's Sixth Counterclaim, and granted as to American's First Counterclaim. Counsel are reminded that trial of the remaining claims in this action will commence on September 23, 1998 at 9:00 a.m.

SO ORDERED.

---

**6.** What relief is available to American as a result of this conclusion will be considered by the Court at the conclusion of the upcoming trial of the remaining claims.