LURZER GMBH, Plaintiff,

v.

AMERICAN SHOWCASE, INC. and
the One Club for Art & Copy,
Inc., Defendants.

No. 97 Civ. 6576(JSR).

United States District Court,
S.D. New York.

Dec. 30, 1998.

Georges Nahitchevansky, Fross Zelnick Lehrman & Zissu, New York City, for plaintiff.

Richard C. Seltzer, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

██ This Memorandum Order resolves all motions not finally determined by the prior orders and proceedings in this case, full familiarity with which is here presumed: Specifically, this Memorandum Order addresses ten issues that either were not presented to the jury or else were raised subsequent to the jury's verdict of October 15, 1998 that (i) found defendant The One Club for Art & Copy, Inc. not liable on plaintiff Lurzer GMBH's trademark infringement claim (the only claim against that defendant not otherwise dismissed by the Court); (ii) found defendant American Showcase, Inc. liable for infringing Lurzer's "Archive" trademark in connection with the publication called "One." and awarded Lurzer $180.00 on that claim; (iii) found American Showcase liable for infringing Lurzer's "Archive" trademark in connection with the publication called "Klik!" and awarded Lurzer

$652,811.00 on that claim; (iv) found American Showcase liable on Lurzer's breach of contract claim for failing to pay certain subscription royalties and awarded Lurzer $39,226.00 on that claim; and (v) awarded American Showcase $219,000.00 on its breach of contract counterclaim against Lurzer for Lurzer's refusal to print 70 pages of paid advertising in certain issues of *Archive* magazine, as to which the Court had previously found Lurzer liable. *See Lurzer GMBH v. American Showcase,* 73 F.Supp.2d 327, 331 (S.D.N.Y. 1998).

First, the Court denies Lurzer's motion for a declaration rescinding the contract between Lurzer and American Showcase [1] and directing American Showcase to take numerous actions attendant on such a declaration. *See* Pl. Mot. at 31.

█ Under New York law (which governs this contract), the extraordinary remedy of rescission will be granted only if the breach in question "may be said to go to the root of the agreement between the parties," *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 678 (2d Cir.1989) *citing Canfield v. Reynolds,* 631 F.2d 169, 178 (2d Cir.1980) (applying New York law), and is "so substantial and fundamental as to strongly defeat the object of the parties in making the contract." *Callanan v. Powers,* 199 N.Y. 268, 284, 92 N.E. 747 (Ct.App.1910). While Lurzer claims that the trademark infringement found by the jury constitutes such a breach, in actuality that infringement had nothing to do with the contract in question, which, as the Court previously determined, is "silent regarding trademark rights." *Lurzer,* 73 F.Supp.2d at 329.

Rather, the fundamental purpose of the contract is to arrange for the publication and distribution in the United States of *Archive* magazine. American Showcase breached this contract in only two, minor respects—first, as the jury found, by failing to pay $39,226.00 in subscription royalties during a limited period of time, and, second, as the Court found, by failing to pay $9,191.00 for run-ons and related items as a result of a misapplication of currency exchange rates. *See* Trial Tr. 2324–25, 2523. These acts, whether evaluated alone or in combination, cannot be considered a substantial breach in the context of this large, long-term contract.[2] Indeed, courts have declined to grant rescission in cases where defendants have been far more delinquent in paying far greater percentages of royalties required under a contract. *See, e.g., Nolan v. Sam Fox Publishing Co.,* 499 F.2d 1394, 1398–99 (2d Cir.1974) (affirming trial court's refusal to grant rescission where defendant failed to pay 74 per cent of the royalties due under a contract). Accordingly, Lurzer's application for rescission must be denied.

Second, the Court grants in part and denies in part Lurzer's motion for a permanent injunction enjoining American Showcase from using Lurzer's "Archive" mark in any way, soliciting business from any of Lurzer's subscribers or advertisers, misleading anyone into believing that *Klik!* or *One.* are related to *Archive,* and misappropriating editorial materials submitted for publication in *Archive. See* Pl. Mot. at 24; Oral Arg. Tr. Nov. 25, 1998.

█ Although the Lanham Act gives a district court the power to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable," 15 U.S.C. § 1116, "the

---

**1.** The contract consists of a written agreement executed on March 14, 1987 and two letters exchanged by the parties in 1992 that amended the 1987 agreement in certain respects.

**2.** By contrast, as noted above, the Court, on summary judgment, found that Lurzer itself had breached the same contract by refusing over a substantial period to print the requisite 70 pages of paid advertising obtained by American Showcase, *Lurzer,* 73 F.Supp.2d 327, 331, a breach as to which the jury awarded some $219,000.00 in damages. American Showcase, however, does not seek rescission.

relief granted should be no broader than necessary to cure the effects of the harm caused," *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir.1992) (internal citations and quotation marks omitted). Here, it is clear to the Court from its own familiarity with the evidence in this case that the jury's findings of infringement were based not on an ongoing pattern of widespread abuse but on a few discreet, albeit willful, instances of misuse of the *Archive* name and letterhead in connection with the sale of advertising in *Klik!* (and, to a trivial extent, in connection with *One.*). Since American Showcase has "ceased its infringing conduct and shows no inclination to repeat the offense," *Reader's Digest, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 807 (D.C.Cir.1987), the broad injunctive relief Lurzer seeks is unwarranted. *See Id.; Schutt Mfg. Co. v. Riddel, Inc.*, 623 F.2d 202, 207 (7th Cir. 1982); *cf. Burndy Corp. v. Teledyne Industries*, 748 F.2d 767, 772 (2d Cir.1984).

Moreover, granting the sweeping injunction sought by Lurzer would allow it to prevail on claims it has already litigated and lost. For example, preventing American Showcase from using the mark "in any way" would preclude it from performing its contractual duty to distribute the United States edition of *Archive*. *See* Def. Ex. 52, Contract of March 14, 1987 ("1987 Contract"), Part I ¶ 1. This would amount to a rescission of the contract between the parties—a remedy the Court has rejected.

■ Nevertheless, based on the parties' submissions and oral arguments, the Court concludes that there continues to exist some danger that American Showcase is not taking sufficient steps to disabuse those persons seeking to submit editorial material for publication in *Archive* of any notion that American Showcase is any longer entitled to have any role in that process. Accordingly, American Showcase is hereby not only enjoined from soliciting editorial materials for publication in *Archive* magazine but also directed to send directly to Lurzer, within 48 hours of receipt, any editorial materials intended for

*Archive* that American Showcase hereinafter receives. Moreover, in order to obviate any future such submissions to American Showcase, the Court also enjoins American Showcase from making any statement suggesting that editorial materials for *Archive* should be submitted to American Showcase or that American Showcase is acting as Lurzer's agent in any way with respect to such materials.

Third, the Court denies Lurzer's motion for an award of prospective advertising costs to correct the "misleading impressions created by defendant's infringement." Pl. Mot. 28.

■ Corrective advertising is a remedy designed to "counteract the public confusion" resulting from trademark infringement, *see Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir.1977); but at the trial in this case Lurzer was unable to adduce material evidence of actual confusion and, instead, submitted its infringement claims to the jury on a theory of intentional deception. *See* Trial Tr. at 1297. Moreover, even if Lurzer were now able to adduce sufficient proof of actual confusion as to merit further consideration of the issue, the motion would nonetheless fail because Lurzer has not made the additional showing necessary to justify a *prospective* award, an extraordinary remedy reserved for cases in which a plaintiff lacks the financial ability to pay for reparative ads. *See Mastercard Int'l v. Arbel Corp.*, No. 86 Civ. 6801(SWK), 1989 WL 125781, at *8 (S.D.N.Y. Oct. 18, 1989); *Cuisinarts, Inc. v. Robot–Coupe Int'l*, 580 F.Supp. 634, 641 (S.D.N.Y.1984).

■ Fourth, the Court denies Lurzer's motion to vacate the jury award of $219,000 for American Showcase's breach of contract counterclaim on the ground that American Showcase failed to give proper notice of the breach and the concomitant opportunity to cure.

This belated argument—made not only after the Court awarded summary judgment on the counterclaim but also after

Lurzer allowed the issue of damages on the counterclaim to be submitted to the jury without this objection—comes far too late to avoid the bar of waiver. *See Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991); *cf. Peter A. Camilli & Sons, Inc. v. State*, 41 Misc.2d 218, 223, 245 N.Y.S.2d 521, 527 (Ct.Cl.1963); *Kelly v. St. Michael's Roman Catholic Church*, 148 App. Div. 767, 773, 133 N.Y.S. 328, 334 (2d Dep't 1912).

■ Moreover, contrary to Lurzer's arguments, this Court never ruled that American Showcase's notice of default (or the countervailing notice of default submitted by Lurzer in connection with *its* breach of contract claim) was inadequate for all purposes. Rather, the Court simply found that the notices were insufficient to trigger the forfeiture provisions of the contract, which provide that failure to cure within a specified period after receiving proper notice results in a loss of all contractual rights. Trial Tr. at 1480, 2501; *see* 1987 Contract, Part I ¶ 9(vi), Part II ¶ 1A. As the Court noted in making its prior ruling, when a party seeks the draconian remedy of forfeiture based on another party's failure to respond to a notice of default, the notice in question will be scrutinized carefully and any inadequacy, no matter how trivial, will defeat the claim. *See, e.g., Siegel v. Kentucky Fried Chicken*, 67 N.Y.2d 792, 501 N.Y.S.2d 317, 492 N.E.2d 390 (Ct.App.1986) *Chinatown Apartments, Inc. v. Lam*, 51 N.Y.2d 786, 433 N.Y.S.2d 86, 412 N.E.2d 1312 (1980); *Filmtrucks, Inc. v. Express Industries and Terminal Corp.*, 127 A.D.2d 509, 510, 511 N.Y.S.2d 862 (1st Dep't 1987). This is an expression of the broader principle that the law disfavors forfeiture and that "[i]n the construction of all contracts under which forfeitures are claimed, it is the duty of the court to interpret them strictly in order to avoid such a result." *Lyon v. Hersey*, 103 N.Y. 264, 270, 8 N.E. 518 (Ct.App.1886); *cf. J.N.A. Realty Corp. v. Cross Bay Chelsea*, 42 N.Y.2d 392, 397–399, 397 N.Y.S.2d 958, 960–961, 366 N.E.2d 1313, 1316.

By contrast, where the law's disdain for forfeiture is not implicated, strict scrutiny of a notice of a default is unwarranted. Consequently, where, as here, a party raises defective notice not as a ground for forfeiture but as a basis for avoiding a jury award for breach of contract, courts examine the notice at issue more liberally. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir.1977). From this more relaxed perspective, it cannot be said that American Showcase's notice of default was so defective as to prevent it from suing for breach. Thus, even if Lurzer had not waived its right to insist on notice and opportunity to cure, its motion would nonetheless fail.

■ Fifth, the Court denies Lurzer's motion for an award of nearly $750,000 in legal fees, costs, and disbursements as a result of its (partial) success on the infringement claims. *See* Pl. Mot. for Fees, Costs & Disbursements Ex. A.

The Lanham Act provides that attorney's fees may be awarded only in "exceptional cases." 15 U.S.C. § 1117; *see VIP Foods v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir.1982). Even in a case where, as here, the defendant engaged in willful deception, a court may decline to award such fees if there are other, mitigating factors. *See, e.g., Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 302 (S.D.N.Y.1997) (declining to award attorney's fees despite a finding of bad faith infringement). In the instant case, there are numerous such factors, including, *inter alia*, the absence of material evidence that Lurzer itself suffered any "ascertainable damage" from the few, isolated acts of infringement that formed the basis of the jury's award, *see Vulcan Pet*, 675 F.2d at 1229, and the fact that the case "presented a number of close and contested issues" as to which "the outcome was by no means a foregone conclusion." *Simon & Schuster*, 970 F.Supp. at 302.

Moreover, one cannot isolate the jury's finding of willful infringement from the broader context of this case: endless spar-

ring and protracted litigation by belligerent parties who insist in couching in one-sided fashion what to any outsider appear to be multifaceted disagreements for which both sides bear blame and as to which neither party comes with unclean hands. Thus, in light of all the relevant factors, the Court finds that this is not an "exceptional" case within the meaning of the Lanham Act and that Lurzer's application for an award of attorney's fees must be denied.

Sixth, the Court grants in part and denies in part the motion of American Showcase for an injunction requiring Lurzer (a) to print in all future issues of *Archive* magazine distributed in the United States up to 70 pages of paid advertising obtained by American Showcase, (b) to intersperse these advertisements throughout the magazine, and (c) to maintain a 60% to 40% ratio of editorial content to advertising.

With respect to "a," the Court finds that injunctive relief is warranted in light of Lurzer's ongoing breach of the contract. Even after the Court granted summary judgment to American Showcase on this issue, Lurzer continued to refuse to print the requisite number of advertising pages, *see* Affidavit of Ann Middlebrook Ex. B, Letter from Walter Lurzer to Ann Middlebrook, relying on the "excuse" that the Court had not yet issued a final judgment in the case. Such callous disregard for the determinations of this Court clearly justifies permanent injunctive relief. *Cf. Galella v. Onassis*, 487 F.2d 986, 998 (2d Cir. 1973). Accordingly, Lurzer is hereby ordered to publish, in each future issue of the United States edition of *Archive*, up to seventy pages of paid advertising submitted by American Showcase.

The Court declines, however, to grant the remainder of American Showcase's application, since nowhere in the contract between the parties is Lurzer expressly required to spread the advertising throughout the publication or to maintain a 60% to 40% editorial-to-advertising page ratio. For now, the controversies over these putative "requirements" no more than provide fodder for the parties' inevitable future lawsuits.

Seventh, the Court denies American Showcase's motion for remittitur of the jury's award to Lurzer of $39,226 for American Showcase's failure to pay subscription royalties due under the contract. In contrast to Lanham Act damages, *see infra,* a jury award of contract damages should only be disturbed where the defendant demonstrates a "particular discernible error" in the calculation of damages or "where the award is so high as to shock the judicial conscience and constitute a denial of justice." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 165 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990). Here, the award can hardly be said to be so high as to shock the judicial conscience, and American Showcase has not demonstrated a particular discernible error warranting remittitur. While it now asserts that the methodology used by Lurzer's expert was flawed, it chose not to cross-examine that expert at trial as to how he arrived at his subscription royalty figures, but instead simply presented its own expert's competing testimony as to what damages were appropriate. Given this failure, it is simply too late in the day to argue that the jury was misled by flawed methodology. Rather, the jury was free to choose between the testimony of two competing experts and did so. That choice must now be respected. *See Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 335 (2d Cir.1993).

Eighth, Lurzer's motion to treble the jury's trademark infringement awards on both claims is denied, but American Showcase's motion to reduce the jury's award on the *Klik!* claim is granted in part.

While it is increasingly clear that claims for damages or profits under the Lanham Act must first be tried to a jury even where, as here, the claim is predicated on intentional deception rather than actual

confusion, *cf. Dairy Queen Inc. v. Wood,* 369 U.S. 469, 476–79, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Ideal World Marketing v. Duracell, Inc.,* 997 F.Supp. 334, 337–40 (E.D.N.Y.1998); *Gucci America, Inc. v. Accents,* 994 F.Supp. 538, 539 (S.D.N.Y. 1998) (Rakoff, J.); *see generally* David W. Bargman, *Right to a Jury Trial in Trademark and Copyright Cases,* N.Y.L.J. May 15, 1998 at 1, the Lanham Act not only provides that a plaintiff's recovery is generally "subject to the principles of equity," 15 U.S.C. § 1117, but also that a district court should determine whether a jury's award of profits is "inadequate or excessive" and, if so, enter judgment for "such sum as the court shall find to be just, according to the circumstances of the case." *Id.* In granting this "unusual power and responsibility" to the district court, the statute both implements the broad equitable discretion generally accorded to courts in trademark matters and recognizes the occasional "danger that verdicts based on [technical trademark] formulations will do serious injustice." *Stuart v. Collins,* 489 F.Supp. 827, 834 (S.D.N.Y. 1980).

Here, as noted, there is little evidence to suggest that Lurzer suffered material harm from the few acts of infringement that formed the basis of the jury's verdict. This fact was fairly reflected in the jury's award of only $180.00 in damages with respect to the infringing conduct concerning One. magazine. But when it came to the claim regarding Klik!, while Lurzer, unable to prove consumer confusion, was obliged to seek an accounting rather than proving actual damages, *see* Trial Tr. at 1297, the jury, confronted with two polar positions from the competing experts, was given something of a Hobson's choice between unreasonable extremes and opted for a correspondingly extreme award of $652,811.00

In the Court's view, that award on the Klik! claim is entirely disproportionate to the evidence of misconduct, however viewed. Essentially, American Showcase was engaged in the practice of "cross-selling." It targeted Archive advertisers when soliciting ads for Klik! and it targeted Klik! advertisers when soliciting ads for Archive. Compare Pl.Ex. 137 (letter soliciting Klik! advertisers for Archive ) with Pl.Ex. 45 (letter soliciting Archive advertisers for Klik! ). Thus, although it is true that American Showcase wrongfully traded on *Archive's* goodwill when, without Lurzer's permission, it used the Archive name to promote Klik!, it is likewise true that American Showcase used Klik!'s goodwill in the service of Archive. Lurzer thus received some benefit from the very behavior of which it complains. While this does not excuse American Showcase's conduct, it nonetheless suggests that allowing the jury's award to stand would grant Lurzer a windfall entirely out of proportion to any harm it may have suffered.

Moreover, part of the reason for the disproportion of the jury's award was that, under established precedent, it was the defendant's burden to prove that particular sales were not due to its infringing conduct, *see George Basch Co. v. Blue Coral,* 968 F.2d 1532, 1539 (2d Cir.1992), and American Showcase chose instead to focus its jury defense on other grounds. As a result, the jury apparently awarded Lurzer nearly all of American Showcase's profits from nearly all sales of *Klik!* volumes 1–5 even though the use of the "Archive" mark in advertising for most of these issues was peripheral.

At this post-verdict stage, however, the Court, sitting in equity, must nevertheless consider the strength of the link between the infringement and the defendant's profits in deciding whether to reduce or vacate the jury's award of profits. *Cf. id.* at 1540 (stating that a court must consider "the degree of certainty that the defendants benefitted from the unlawful conduct" in deciding whether the equities warrant an accounting). Here, the slim evidence that Klik! sales resulted from use of the "Archive" name suggests that awarding a full accounting is unwarranted.

Moreover, even if the Court were inclined to award a full accounting, the jury's estimation of profits would have to be disregarded, since it is clearly excessive. The financial statements for Klik! volumes 1–4 reveal that they generated $532,352.70 in pre-tax income before deducting for salaries. *See* Def. Ex. 179A. The financial statement for Klik! 5—which was not received in evidence but which this Court, sitting in equity, may consider, *see Stuart,* 489 F.Supp. at 834 n. 23 (considering evidence of tax liabilities that was not submitted to the jury)—reveals an additional $24,470 in pre-tax, pre-salary income. Added together, these figures amount to almost one hundred thousand dollars less than the jury's award, even before deducting for salaries and other expenses.

As to expenses, although American Showcase failed to present the jury with definitive evidence of how much should be deducted for salaries, there was testimony, which the Court credits, to the effect that between twenty and thirty percent of its personnel worked on Klik! during the relevant period. *See* Tr. at 1556, Testimony of Ann Middlebrook; Tr. at 2115–16, Testimony of Brenda Massy. Without accepting American's invitation to consider more evidence not admitted at trial, the Court can justifiably conclude that the jury's otherwise excessive verdict should be reduced still further to account for reasonable estimates of expenses properly matched with revenues.

Given that American Showcase's misconduct was modest, the connection of that misconduct to its profits peripheral, and the amount of the jury award excessive by any reasonable measure, it is clear that the award must not be trebled but must instead be reduced. Trebling the award, or even just allowing it to stand, would not only be inequitable but would violate the statute's direction that any sum awarded "constitute compensation and not a penalty." 15 U.S.C. § 1117. While vacating the award altogether would go too far and deprive the jury's verdict of the reasonable deference that is its due, a fifty per cent reduction will produce a result far more in

keeping with both the equities of the case and with a fair approximation of net profits. Accordingly, the Court exercises its discretion to reduce the Klik! claim award by half, to $326,405.50, with interest to run from the date of this judgment.

Ninth, the Court denies American Showcase's motion for a declaration that its right to use the "Archive" mark is incontestable outside New York, and instead grants Lurzer's motion for assignment to Lurzer of the mark's federal registration.

Marks registered for more than five years are not incontestable if they have been used to misrepresent the source of goods or services, see 15 U.S.C. § 1065; *see also* § 1064(3), and here the jury's verdict makes clear that American Showcase used the Archive trademark to misrepresent the source of goods or services. Specifically, the jury was charged that it could only hold American Showcase liable for infringement if it found that American Showcase, in using the trademark in connection with Klik!, "purposely intended to deceive" people into "believing that [Archive ] was a source or sponsor of Klik!" Trial Tr. at 2454. Thus, the jury's finding of infringement was necessarily predicated on the fact that American Showcase used that trademark to misrepresent the source of Klik!

As a result of this improper use of the trademark, the mark is not incontestable and may be canceled or assigned by the Court pursuant to its powers under § 1119. See 15 U.S.C. § 1119; *see also Cuban Cigar Brands N.V. v. Upmann Int'l,* 457 F.Supp. 1090, 1100–01 (S.D.N.Y. 1978). Although cancellation is the usual statutory remedy for use of a trademark to misrepresent the source of goods, see 15 U.S.C. § 1064(3), section 1119 contemplates alternative remedies in granting the courts power not only to cancel marks but to "otherwise rectify the register." 15 U.S.C. § 1119. The circumstances of this case make it clear that the alternative remedy of assignment is the preferable option in this case, and, indeed, is the

remedy most directly tailored to the facts of this case.

Specifically, the record evidences that American Showcase, from the very beginning of its relationship with Lurzer, treated the "Archive" trademark as Lurzer's property. It attempted, without success, to purchase the mark, see Pl. Exs. 670, 275; Tr. 867–73, 80, and later acquiesced when Lurzer asserted control over the mark in connection with the distribution of Ad Check, an Archive supplement. See Pl.Ex. 542; Tr. at 893. Despite outwardly acting as if the trademark were Lurzer's, however, American Showcase quietly registered the mark in its own name, an act which it chose not to divulge and which did not become known to Lurzer until 1997. Thus, it was through a pattern of deceit that American Showcase was able to obtain the registration and possess it until 1997 without inviting a challenge from Lurzer.

Where a party attempts to wrest control of a trademark from a partner in a different country by secretly registering the mark in its own name, courts have imposed a constructive trust in favor of the partner. *See Blue Cross & Blue Shield Ass'n v. Group Hospitalization & Med. Services,* 744 F.Supp. 700, 720–1 (E.D.Va. 1990); *cf. Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Manufacturing Co.,* 367 F.2d 308, 311 (2d Cir.1966). Here, American Showcase's inequitable conduct requires the same remedy. *Cf. Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 380 N.E.2d 189 (Ct.App.1978). Accordingly, the Court orders that the United States trademark bearing Registration No. 1,433,848 be assigned to Lurzer forthwith and that the parties take all necessary steps to immediately effectuate the transfer.

Tenth, the Court grants in part and denies in part the parties' respective applications for attorney's fees in connection with two previous Court orders regarding discovery disputes, i.e., (i) the Court's written order dated August 25, 1998 awarding American Showcase its fees and costs associated with deposing and moving to preclude the testimony of two plaintiff's experts whose reports were supplemented after applicable deadlines, *see* Order, August 25, 1998, and (ii) the Court's telephonic order of April 15, 1998 awarding Lurzer its fees and costs related to American Showcase's failure to provide Lurzer's accounting experts with full access to certain records on that date.

■ With respect to the August 25 order, American Showcase seeks $65,593.04 in fees and expenses. However, several of the charges submitted are unreasonable on their face. For example, American Showcase billed more than thirty hours of partner and associate time for researching and preparing a two-page letter brief in support of its motion to preclude, and more than eleven hours of partner and associate time in reading and analyzing Lurzer's two-page response to this motion. Likewise, American Showcase's application for sixteen hours of associate time allegedly spent preparing and reviewing its fee application is excessive, given that this can have required little more than printing out and verifying a computerized time record.

In addition, several of the items for which American Showcase seeks compensation represent expenses that American Showcase would have incurred irrespective of Lurzer's late supplementation of the experts' reports. American Showcase, for example, seeks reimbursement for a number of hours spent by its counsel in interviewing possible rebuttal experts and developing lines of cross-examination. While those activities were undoubtedly useful at the deposition of the experts, they also represent efforts that would have been expended in any event in preparation for trial.

The Court also notes that Lurzer's misconduct extended only to providing late supplementary reports, while the original reports were timely produced. In light of this fact, and of the considerations discussed above, the Court finds that a one third reduction in the fees sought by

American Showcase is required. Cf. *In Matter of Sanction of Baker,* 744 F.2d 1438, 1441 (10th Cir.1984) (noting that court has discretion to administer and tailor sanctions "in a manner designed to effectuate the purpose of the sanction"). Accordingly, Lurzer is ordered to pay American Showcase $43,723.69 in fees and costs stemming from Lurzer's untimely supplementation of its experts' reports.

With respect to the April 15 order, the Court similarly finds that a reduction of the fees and expenses sought, here by Lurzer, is required. While the Court has no objection to the invoices for $927.50 and $858.00 submitted for the time spent by Lurzer's accounting experts on the day that access to the records was refused, the hours billed by Lurzer's counsel are excessive. Whereas the accountants billed no more than five hours apiece on the day in question, Lurzer's attorney billed twelve hours of legal time in connection with the dispute and a paralegal at her firm billed some eleven-and-a-half hours. Even assuming that the attorney and her paralegal accompanied the accountants at all times on the day in question, and even adding several hours to compensate for time expended in preparing for and then telephonically applying to the Court for resolution of the discovery dispute, neither the attorney nor the paralegal should reasonably have billed more than eight hours for such services. If such time is billed at a reasonable rate of $250 per hour for the attorney's time and $75 per hour for the paralegal's time,[3] Lurzer is therefore entitled to legal fees in the amount of $2600.00. When added to the aforementioned ac-

counting fees, Lurzer is entitled to a total award of $4385.50.

In summary, and for the foregoing reasons, final judgment is hereby granted in this case as follows:

(1) on Count I of the Amended Complaint (trademark infringement), judgment is to be entered in favor of Lurzer GMBH and against American Showcase, Inc. in the amount of $326,405.50 on the *Klik!* claim and $180.00 on the One. claim, for a total of $326,585.50;

(2) on Count VII of the Amended Complaint (breach of contract), judgment is to be entered in favor of Lurzer GMBH and against American Showcase, Inc. in the amount of $48,417[4] plus $15,043.08 prejudgment interest,[5] for a total of $63,-460.08;

(3) on American Showcase's First Counterclaim (breach of contract), judgment is to be entered for American Showcase, Inc. and against Lurzer GMBH in the amount of $219,000.00, plus $14,782.50 prejudgment interest, for a total of $233,782.50;

(4) American Showcase, Inc. is enjoined from soliciting editorial materials for publication in Archive magazine, is further directed to send directly to Lurzer GMBH, within 48 hours of receipt, any editorial materials intended for Archive that American Showcase hereinafter receives, and is further enjoined from making any statement suggesting that editorial materials for Archive should be submitted to American Showcase or that American Showcase

3. Lurzer failed to submit an hourly rate for either the attorney or her paralegal, and the Court has therefore relied on its own estimation of reasonable rates for this purpose.

4. The total of $48,417 represents both the jury's $39,226.00 award on the subscription royalty claim and the $9,191.00 awarded by the Court on the claim arising from American Showcase's failure to pay the proper exchange rate for certain items for which American Showcase was contractually required to reimburse Lurzer. As to the latter award, the Court found liability as a matter of law, and

the amount of damages was conceded by American Showcase and thus not presented to the jury.

5. With respect to prejudgment interest, the parties agree that, on all breach of contract claims, an award of prejudgment interest at a statutory rate of 9% is required. *See* N.Y. C.P.L.R. §§ 5001 and 5004. The total interest award of $15,043.08 represents $14,384.55 in interest on the subscription royalty claim and $658.53 in interest on the exchange rate claim.

is acting as Lurzer's agent in any way with respect to such materials.

(5) Lurzer GMBH is ordered to publish, in each future issue of the United States edition of Archive, up to seventy pages of paid advertising submitted by American Showcase, Inc.;

(6) the United States trademark bearing Registration No. 1,433,848 is assigned to Lurzer GMBH and the parties are ordered to take any necessary steps to immediately effectuate this transfer;

(7) Lurzer GMBH is ordered to pay American Showcase, Inc. $43,723.69 for Lurzer's failure to meet certain discovery deadlines described in the Court's order dated August 25, 1998;

(8) American Showcase, Inc. is ordered to pay Lurzer GMBH $4,385.50 for American Showcase's failure to provide Lurzer with access to certain records as specified in the Court's telephonic order of April 15, 1998;

(9) All other claims asserted by or against any party in this action, including all claims against co-defendant The One Club for Art & Copy, are dismissed with prejudice.

The net result is that American Showcase owes Lurzer $116,924.89, use of the "Archive" mark in the United States is secured to its rightful owner, and the parties continue in their profitable but contentious joint publication of *Archive* magazine.

Clerk to enter judgment.

SO ORDERED.