[672 NYS2d 39]

CAROLE GOLDBERG et al., Respondents, v MANUFACTURERS LIFE INSURANCE COMPANY et al., Appellants.

First Department, April 21, 1998

## APPEARANCES OF COUNSEL

*Sylvia D. Garland* of counsel (*Hofheimer Gartlir & Gross, L. L. P.*, attorneys), for respondents.

*Neil Merkl* of counsel (*Kelley Drye & Warren, L. L. P.*, attorneys), for Manufacturers Life Insurance Company, appellant.

*Eric Proshansky* of counsel (*Eileen B. Eglin* on the brief; *Traub Eglin Lieberman Straus*, attorneys), for Hirschfeld, Stern, Moyer & Ross, appellant.

## OPINION OF THE COURT

MILONAS, J. P.

In 1988, plaintiffs Bernard and Carole Goldberg purchased two life insurance policies issued by defendant Manufacturers Life Insurance Company (Manulife). Both purchases were made through Arnold Ross, their insurance advisor, who was an officer and principal of defendant Hirschfeld, Stern, Moyer & Ross (HSMR) and Moyer & Ross, a subsidiary of HSMR. By 1990, with respect to policy No. 4087185 (policy #2), plaintiffs had paid a total of $224,776 in three premium payments, according to a schedule apparently prepared by HSMR in connection with the policy, while the policy itself provided a schedule of annual payments through 2019. Then, in March 1990, Carole Goldberg signed a one-page form for a "Vanishing Premium Option" with respect to policy #2. As defined in part "A" of that form,

"[t]he term Vanishing Premium Option does not mean that premiums are no longer due. It does mean that future premiums will be paid by using the current and projected dividends. * * *

"I also understand that with acceptance of the Vanishing Premium Option there is a possibility I will be required to make premium payments at some point in the future if there is insufficient value in the policy to cover the premiums that are due."

In April 1995, following a dispute concerning the premiums due on the other policy, No. 4083881 (policy #1), Manulife paid plaintiffs $472,546 in return for their execution of a "Receipt and General Release," and policy #1 was rescinded. By the first

enumerated paragraph of this two-page document, plaintiffs released Manulife "and its representatives, including, without limitation its past and present agents, employees * * * of and from any and all claims, demands, sums of money, actions, rights, causes of action, obligations and liabilities of any kind or nature whatsoever Claimants may have had or claim to have had, or now have or claim to have, thereafter may have or assert to have, including without limitation, those which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to any act, omission, transaction, dealing, conduct or negotiation of any kind whatsoever between Claimants and arising from the solicitation, purchase or issuance of any contract with Manulife. Claimants do not waive the rights to contractual benefits under Manulife policy number 4087185 [policy #2]." In the paragraph immediately preceding the signatures on the release, plaintiffs acknowledge that they have read the document and understand its contents.

In May 1995, a month after the execution of the release, plaintiffs received two notices from Manulife regarding policy #2: the first notified plaintiffs that the method of premium payment had changed to a quarterly payment of approximately $7,000, while the second stated that the first such payment had been due the previous month. Plaintiffs' attorney responded by letter to the effect that this demand for premium payments under policy #2 was contrary to the representations HSMR had made to plaintiffs concerning that policy. According to plaintiffs, HSMR had represented to them that a vanishing premium meant that, having paid the three installments totaling $224,776, they would pay no further premiums because policy dividends would cover future premiums.

Plaintiffs thereafter commenced this action against Manulife and HSMR, seeking specific performance of the terms of policy #2 as allegedly represented to them; damages for fraudulent misrepresentation; and a statutory penalty against HSMR pursuant to Insurance Law § 2123. Each defendant moved to dismiss the complaint; among the grounds for dismissal, both argued that plaintiffs' claims were barred by the Statute of Limitations and the April 1995 release. Plaintiffs cross-moved for leave to amend the complaint to add Moyer & Ross as a defendant.

By written decision, the court determined that plaintiffs' causes of action had accrued "when the right to bring the action materialized," and that this had occurred only in May 1995 with defendants' written demand for additional premium

payments under policy #2. Thus, since the action was commenced several months after the demand, the court found that the action was timely under both the three-year Statute of Limitations period for Insurance Law § 2123 (*see,* CPLR 214 [2]) as well as the six-year period for fraud claims. However, finding that plaintiffs had failed to state a cause of action for fraud or Insurance Law violation as against Manulife, the court dismissed the second and third causes of action as against that defendant; plaintiffs do not appeal from this dismissal. In all other respects, the court denied both defendants' motions to dismiss.

With respect to the first cause of action, the sole claim against Manulife that it did not dismiss, the court determined that plaintiffs had sufficiently stated a claim for rescission or reformation. It rejected both defendants' argument that plaintiffs' claims were barred by the April 1995 release, finding that "the relevant provisions are ambiguous and reasonably susceptible to more than one interpretation" and that it was "unclear whether the Release was intended to exclude the present claim."

We turn first to the question of whether plaintiffs have stated a cause of action against Manulife for reformation or rescission and conclude that they have not. A claim for reformation of a contract must be based either on mutual mistake or fraudulently induced unilateral mistake (*Chimart Assocs. v Paul*, 66 NY2d 570, 573; *Pahl Equip. Corp. v Kassis*, 182 AD2d 22, *lv to appeal denied in part and dismissed in part* 80 NY2d 1005, *rearg denied* 81 NY2d 782). A claim for rescission of a contract must be predicated on the same grounds (*Matter of Gould v Board of Educ.*, 81 NY2d 446, 453; *P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d 200, 201-202). In the instant case, there is no allegation whatsoever of mutual mistake, and thus this cannot be the basis for reformation or rescission of policy #2. Nor can plaintiffs avail themselves of fraudulent inducement as the basis of this cause of action as against Manulife, in light of the court's dismissal of the fraud-claims as against that defendant. Accordingly, this cause of action, too, should have been dismissed.

In this regard, we note that the possibility of plaintiffs' responsibility to pay future premiums was easily discoverable by reading either the policy or at least the one-page form that plaintiff wife signed in 1990, which provided in plain English a clear definition of a vanishing premium option and explicitly stated that plaintiffs might be responsible for premium pay-

ments in the future. Plaintiffs cannot avoid the express terms of the disputed policy by claiming they failed to read the documents they signed and acknowledged as having read and understood (*see, e.g., Blog v Battery Park City Auth.*, 234 AD2d 99, 100-101; *Pommer v Trustco Bank*, 183 AD2d 976, 977-978, *lv to appeal dismissed in part and denied in part* 81 NY2d 758). Such mistake based on a party's own negligence—in this case, the failure to read either document—cannot serve as the basis for rescission or reformation (*P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d 200, 201-202, *supra*).

■ In addition, contrary to the court's determination that plaintiffs' causes of action accrued only with the May 1995 demand for premium payments, we find that the action in its entirety as to both appellants is barred by the applicable Statutes of Limitation. This is so no matter how the claims are construed. A cause of action for rescission or reformation based on mistake is governed by a six-year Statute of Limitations (CPLR 213 [6]; *Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 547), a period that begins to run from the time that the alleged error was committed; here, that would be in 1988 with the purchase of the policy. Where an action for reformation or rescission is based on fraud, it must be brought either within six years of the commission of the fraud, or within two years from the discovery of the fraud or from when the fraud could have been discovered with reasonable diligence; these Statutes of Limitation govern all claims sounding in fraud (CPLR 213 [8]; 203 [g]). Here, the alleged fraud was committed in 1988; with reasonable diligence, it should have been discovered at the very latest when Carole Goldberg signed the vanishing premium option form in 1990. Thus, under either calculation, any claim based on fraud as against either defendant was time barred as of 1992 or 1994.

Similarly, the cause of action under Insurance Law § 2123 for misleading statements made by an insurer's agent or representative, which survived the dismissal motion only as to HSMR and is governed by a three-year Statute of Limitations (CPLR 214 [2]), begins to run at the time the false or misleading statements are made. Again, since the alleged misrepresentations were made in connection with the purchase of the policy, the three years began to run in 1988 and expired in 1991.

■ Finally, with respect to the scope of the release signed by plaintiffs, which rescinded policy #1, we find that the release also bars this action as against HSMR, which, according to the

parties, acted as agent for Manulife. The disputed provision, set forth more fully above, clearly and unambiguously discharges Manulife and its agents from *"any and all* claims \* \* \* causes of action, obligations and liabilities *of any kind or nature whatsoever"* that plaintiffs then had or might have in the future, "including *without limitation,* those which arise out of or are *in any manner whatsoever* \* \* \* connected with or related to any \* \* \* transaction \* \* \* or *negotiation of any kind whatsoever* \* \* \* and arising from the solicitation, purchase or issuance of *any contract with Manulife"* (all emphases added). The very next sentence explicitly exempts from this release plaintiffs' "rights to contractual benefits" under policy #2.

Contrary to the court's finding that the scope of the release was ambiguous and that it was "unclear" whether the release was meant to exclude the present claim, we read this provision to explicitly bar any claim "whatsoever" except for "contractual benefits" to which plaintiffs are entitled under policy #2. That is, the language underscored above would be meaningless if it failed to apply to a claim such as the one before us. If the release were meant to cover only policy #1, there would be no need to explicitly except plaintiffs' contractual benefits under policy #2. Or, put another way, if the release were meant to cover only policy #1, it could easily have said so, either by restricting its terms to that policy alone, or providing that it did not apply in *any* way to policy #2. Instead, the language refers to "any and all" claims arising out of "any contract with Manulife," and the sole exception concerns plaintiffs' rights to "contractual benefits" under policy #2.

Because we find this language to be clear and unambiguous on its face, the expressed intent will be given effect (*see, e.g., Skluth v United Merchants & Mfrs.,* 163 AD2d 104, 106-107, *appeal withdrawn* 79 NY2d 976). We will not look to extrinsic evidence to give meaning to a written contract such as the release before us where there is no need to do so (*Wells v Shearson Lehman/Am. Express,* 72 NY2d 11, 18-19, *rearg denied* 72 NY2d 953; *Thailer v LaRocca,* 174 AD2d 731); thus, that plaintiffs now profess their subjective intention was not to surrender *any* rights under policy #2 does not defeat enforcement of the clear intent of the release.

Accordingly, since plaintiffs' claims against HSMR, consisting of fraudulent misrepresentations, do not come within the scope of the narrow exception of "contractual benefits" under policy #2 under any interpretation of that phrase, the release clearly bars the present action against HSMR.

While Manulife urges that the same language also covers the claim against it, arguing that the term "contractual benefits" means only *payment* of benefits and no other rights under the policy, we have already determined that the single cause of action remaining against Manulife must be dismissed on other grounds.

Accordingly, the order of Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about June 26, 1996, which, insofar as appealed from by defendant Manufacturers Life Insurance, denied its motion to dismiss the first cause of action as against it, and, insofar as appealed from by defendant Hirschfeld, Stern, Moyer & Ross, denied its motion to dismiss the complaint as against it, and granted plaintiffs' motion to amend the complaint, should be reversed, on the law, without costs, the motion of each defendant should be granted, the complaint dismissed and the motion for leave to amend denied. The Clerk is directed to enter judgment in favor of defendants-appellants, dismissing the complaint.

RUBIN, TOM and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 26, 1996, reversed, on the law, without costs, the motion of defendant Manufacturers Life Insurance to dismiss the first cause of action as against it granted, and the motion by defendant Hirschfeld, Stern, Moyer & Ross to dismiss the complaint as against it granted, and the plaintiffs' motion to amend the complaint denied.