**LADENBURG THALMANN & CO. INC., Plaintiff,**

v.

**IMAGING DIAGNOSTIC SYSTEMS, INC., Defendant.**

**No. 01 CIV 2042(VM).**

United States District Court, S.D. New York.

Dec. 10, 2001.

Jay S. Auslander, Harris Beach, L.L.P., New York City, for plaintiff.

***Decision and Order***

MARRERO, District Judge.

Plaintiff Ladenburg Thalmann & Co., Inc. (hereinafter "Ladenburg") brought this action, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, against defendant Imaging Diagnostic Systems, Inc. (hereinafter "IDS"). Ladenburg claims fraud and breach of contract. IDS filed the instant motion to (1) dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity, and (2) strike Ladenburg's request for punitive damages and seeking costs and expenses. For the reasons set forth below, IDS's motion to dismiss is granted in part and denied in part, and its motion to strike is granted.

## I. BACKGROUND

Ladenburg's complaint alleges that, on or about May 1, 2000, Ladenburg and IDS executed a letter agreement under which Ladenburg was engaged as the exclusive placement agent for a proposed private offering of up to $7 million worth of IDS securities (Compl. ¶ 1, Ex. A (hereinafter "First Agreement").) Ladenburg also alleges that on the same date, Ladenburg and IDS executed a second letter agreement whereby Ladenburg was engaged as the exclusive placement agent for $20 million of IDS securities in a proposed private offering. (Compl. ¶ 1, Ex. B (hereinafter "Second Agreement").)

By a letter dated May 23, 2000 and addressed to Robert J. Kropp, Director of Investment Banking at Ladenburg, (hereinafter "Kropp"), Linda B. Grable,

president of IDS, (hereinafter "Grable") requested that Ladenburg agree to terminate and release IDS from its obligations under the First and Second Agreements (hereinafter the "Release"). (Affidavit of Linda B. Grable, dated May 24, 2001, ¶ 2, Ex. 1.)[1] The Release states that IDS informed Ladenburg of its need for financing prior to the completion of the First and Second Agreements and, by agreeing to the Release, Ladenburg would permit IDS to seek alternate sources of funding. (Release.) Further, on its face the Release appears to terminate the First and Second Agreements without IDS owing any fees or compensation to Ladenburg and to absolve IDS "from any claims for fees and/or any other compensation" made by Ladenburg under the First or Second Agreement. (Release.)

Ladenburg alleged that on or about May 31, 2000, while both agreements were in effect, Grable represented to Michael Vasinkevich, managing director of Ladenburg's Structured Finance Group (hereinafter "Vasinkevich"), that IDS needed financing immediately. Ladenburg alleged that Vasinkevich informed Grable that "Ladenburg could not provide [such funding] at this time *due to* the market overhang ... held by Charleton Avenue LLC." (Compl. ¶ 15, Ex. C (hereinafter "Revocation Letter") (emphasis added).) A market overhang is created by the existence of a security that is convertible into common stock at a discount to the market price; the convertible securities may be made available for sale on the market at any time regardless of the market price. The market overhang at issue involved the possession of a "substantial block of discount Series I convertible preferred stock and convertible debentures [issued by IDS and] held by Charlton Avenue LLC." That

situation allegedly hindered Ladenburg's efforts to obtain investors for IDS. (Revocation Letter.) Ladenburg alleges that, in fact but unknown to Vasinkevich, Charleton Avenue LLC converted its holdings prior to May 26, 2000 and that IDS was aware of that conversion. (Compl. ¶ 15; Revocation Letter.)

Ladenburg further asserts that at the time of her conversation with Vasinkevich on or about May 31, 2001, Grable was aware that the market overhang already had "disappeared". (Revocation Letter.) Grable did not inform Vasinkevich or anyone at Ladenburg of the conversion and disappearance of the market overhang. Instead she "induced" Kropp to execute on May 31, 2000, the Release she had proposed to Ladenburg in the form of the May 23, 2000 letter to Kropp. (Compl. ¶ 15; Revocation Letter.)

Ladenburg alleges that it would not have executed the Release had it not been laboring under the misconception that there remained a market overhang. (Compl. ¶¶ 15, 56; Revocation Letter.) Ladenburg believes that Grable's silence violated a duty to disclose, arising out of IDS's possession of superior knowledge, that IDS owed to Ladenburg. (Compl. ¶¶ 16, 54–55.)

At some point soon after executing the Release letter on May 31, 2000, Ladenburg discovered the conversion and disappearance of the market overhang. (Revocation Letter.) Ladenburg further alleges that upon its discovery of the conversion, it realized it was able to provide the immediate financing IDS requested. (Revocation Letter.) Immediately, on June 1, 2000, it sent the Revocation Letter to IDS that (1) alerted IDS to the mistake of fact under which Ladenburg acted, (2) purported to

---

1. The Court will consider the Release as a part of IDS's motion to dismiss because it is integral to and expressly referenced by Ladenburg's complaint. *See* Section II.A.

"revoke" the Release, and (3) indicated that it was willing and able to fulfill its obligations under the First and Second Agreements. (Revocation Letter.) Ladenburg has alleged two claims for fraud based on the foregoing conduct.

IDS argues that even if the foregoing is accepted as true for purposes of the motion to dismiss, the complaint should be dismissed for failure to state a claim. In particular, IDS asserts that the Release operates as a bar to Ladenburg's entire action. Concerning Ladenburg's fraud claims in particular, IDS argues that Ladenburg failed to identify any damages caused by the alleged fraud and failed to specify the fraud with sufficient particularity. Finally, IDS asserts that Ladenburg's request for punitive damages should be stricken because Ladenburg failed to allege conduct sufficiently wrongful to support an award of punitive damages under the standard required by New York law.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW UNDER FEDERAL RULE OF CIVIL PRO-CEDURE 12(b)(6)*

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994). In reviewing the pleadings, the court must accept the non-moving party's allegations as true. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. *See I. Meyer Pincus & Associates, Inc. v. Oppen-*

*heimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *2 Broadway LLC v. Credit Suisse First Boston,* No. 00 Civ. 5773, 2001 WL 410074, *5 (S.D.N.Y. Apr.23, 2001).

Ladenburg attached to the complaint the First Agreement, Second Agreement and Revocation Letter. The complaint and Revocation Letter contain express references to the Release. (Compl. ¶¶ 15, 17, and Ex. C.) Indeed, Ladenburg's fraud allegations arise out of the execution of the Release. (Compl.¶¶ 15–17, 45–51, 53–59.) Thus, in deciding IDS's motion to dismiss, the Court will also consider the Release.

### B. *CLAIMS FOR BREACH OF CONTRACT*

Ladenburg's first, second and third claims allege breach of contract. IDS asserts that the Release, in which Ladenburg agreed to give up any claims for fees or other compensation under the First and Second Agreements, bars the claim for breach of contract. IDS does not contend that Ladenburg otherwise failed to state a claim for breach of contract. Rather, it argues that Ladenburg did not formally request a rescission, nor sought to effectuate it by court determination, and therefore is barred from proceeding with this action. The Court will review the parties' arguments in sequence.

Ladenburg argues that when it issued the Revocation Letter on June 1, 2000, it voided the Release and thereby eliminated any need to seek rescission of the Release in court. Further, Ladenburg believes that even if the Revocation Letter did not effect a rescission, the complaint should not be dismissed because implicit in its claim for breach of contract is a claim to rescind the Release. Thus, the question before the Court is whether the Release operates as a bar to Ladenburg's claims for breach of contract.

Under New York law, a release is governed by principles of contract law and a court should enforce a valid release by its clear terms. *See Mangini v. McClurg*, 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386, 389–90 (1969). Indeed, the existence of a valid release may warrant dismissal, pursuant to Rule 12(b)(6), of a claim for breach of contract that was clearly encompassed by the release. *See Goldberg v. Manufacturer's Life Ins. Co.*, 242 A.D.2d 175, 672 N.Y.S.2d 39, 44 (1st Dep't 1998). However, if a party is fraudulently induced to execute a release, the release is a voidable contract and may be voided by the defrauded party. *See Kamerman v. Curtis*, 285 N.Y. 221, 33 N.E.2d 530, 532 (1941); *see also Bazzano v. L'Oreal*, No. 93 Civ. 7121, 1996 WL 254873, *3 (S.D.N.Y. May 14, 1996); *see also* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.10 at 402–05 (1990).

Faced with a voidable contract induced by fraud, the defrauded party has the option to either disaffirm or affirm the contract. *See Big Apple Car v. City of New York*, 204 A.D.2d 109, 611 N.Y.S.2d 533, 534 (1st Dep't 1994); *see also* Farnsworth, *supra*, § 4.15 at 426; 1 Arthur Linton Corbin and Joseph M. Perillo, *Corbin on Contracts* § 1.6 at 18, 20 (1993). To disaffirm the contract, the defrauded party must offer to return any consideration received. *See Clearview Concrete Products Corp. v. S. Charles Gherardi Inc.*, 88 A.D.2d 461, 453 N.Y.S.2d 750, 754–55 (2d Dep't 1982); *see also* Farnsworth, *supra*, § 4.15 at 404; Corbin, *supra*, § 1.6 at 19.

Here, Ladenburg filed the instant action under the assumption that the Release was already voided, and that it need not seek rescission as an equitable remedy from the Court. The question, therefore, is whether under New York law the Revocation Letter actually effected a rescission of the Release. By its terms, the Release bars claims for fees and/or any other compensation under the First and Second Agreements, and thus encompasses every claim in Ladenburg's complaint. (Compl. ¶¶ 26, 35, 41–42, 50, 58.) Case law does not support the proposition that a letter by itself, absent some consideration or other compelling circumstances, is sufficient to effect a rescission of a release. *See, e.g., Clearview Concrete Products Corp.*, 453 N.Y.S.2d at 754–55 (2nd Dep't 1982) (rescission effected by return of benefits received as well as statement to disaffirm contract); *see also K.M.L. Laboratories Ltd. v. Hopper*, 830 F.Supp. 159, 164 (E.D.N.Y.1993) (citing *Kamerman v. Curtis*, 285 N.Y. 221, 33 N.E.2d 530 (1941)) (rescission is appropriate to restore the precontract status quo).[2]

By contrast, IDS persuasively argues that a party should make a formal request for rescission of a release when asserting a claim arising out of the underlying, purportedly-released obligation. *See Goldberg v. Manufacturers Life Insurance Co.*, 242 A.D.2d 175, 672 N.Y.S.2d 39, 44 (1st Dep't 1998) (dismissing claims against insurance company where plaintiff executed a "clear and unambiguous" release agreement); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112 (2d Cir.1984) (citing *Dambmann v. Schulting*, 75 N.Y. 55 (1878); *Gurnee v. Hasbrouck*, 267 N.Y. 57, 195 N.E. 683 (1935)) (holding plaintiff's claim of fraud was not supported, and thus did not invalidate release

**2.** Even though Ladenburg received no tangible consideration under the Release, the Release relieved Ladenburg of its obligations to procure investors for IDS and thereby conferred some benefit. However, the pleadings do not indicate what affirmative action Ladenburg took to bring the parties back into the situation they held prior to execution of the Release.

as bar to plaintiff's claims). Accordingly, here, the Court concludes that the Release was not rescinded merely by virtue of the Revocation Letter. Nevertheless, the analysis does not end at this point.

 IDS argues that it is entitled to a dismissal of the action because Ladenburg has not requested the relief of rescission, and, therefore, there is no need to look beyond the four corners of the Release. To make a successful request to set aside a release on grounds of fraud, the defrauded party must show "a material misrepresentation of fact, made with knowledge of its falsity, with intent to deceive, justifiable reliance and damages." *Liling v. Segal*, 220 A.D.2d 724, 633 N.Y.S.2d 199 (2nd Dep't 1995) (quoting *Mergler v. Crystal Props. Assoc.*, 179 A.D.2d 177, 583 N.Y.S.2d 229, 232 (1st Dep't 1992)) (holding that because plaintiffs failed to plead fraud with particularity the waiver was valid and barred plaintiff's complaint). Furthermore, IDS argues that, by waiting nine months before bringing this action, Ladenburg delayed unreasonably after discovering the alleged fraud before seeking rescission. *See Samuel Schiffer v. Dietz*, 83 N.Y. 300 (1881); *International Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611, 1999 WL 619633, at *5 (S.D.N.Y. Aug.16, 1999).

 Ladenburg has not made a formal request for such relief. Rather, Ladenburg's complaint, read in the light most favorable to Ladenburg as the non-movant, contains allegations that, if proven, would support a request for recission. Ladenburg argues that these allegations are sufficient to defeat IDS's motion to dismiss. Under relevant New York case law, mere allegations of fraud in the inducement of a release warrant denial of a motion to dismiss that is grounded on a release. *See Allen v. Bergleitner*, 255 A.D.2d 668, 679 N.Y.S.2d 458, 459 (3rd Dep't 1998) (citing

*Newin Corp. v. Hartford Accident & Indemnity Co.*, 37 N.Y.2d 211, 371 N.Y.S.2d 884, 333 N.E.2d 163 (1975); *Steen v. Bump*, 233 A.D.2d 583, 649 N.Y.S.2d 731 (3rd Dep't 1996)) (allegations of fraud or duress in procurement of release sufficient to deny motion for summary judgment under New York law); *Gibli v. Kadosh*, 279 A.D.2d 35, 717 N.Y.S.2d 553, 555 (1st Dep't 2000) (allegations of fraud or duress in procurement of release are sufficient to overcome a motion to dismiss based on a release). Moreover, case law relied upon by both parties holds that whether a delay is reasonable or not is a factual question for the jury and is not the proper basis for a motion to dismiss under Rule 12(b)(6). *See International Motor Sports Group*, 1999 WL 619633 at *5. That the delay "could constitute unreasonable delay," (Reply Memorandum of Defendant Imaging Diagnostic Systems, Inc., at 8), leaves too much doubt to warrant dismissal. *See International Motor Sports Group*, 1999 WL 619633 at *5; *see also Hishon*, 467 U.S. at 69, 104 S.Ct. 2229.

Accordingly, in light of Ladenburg's allegations of fraud in the inducement, the Court is not persuaded that the Release operates to bar Ladenburg's claims for breach of contract.

## C. *CLAIMS FOR FRAUD*

Ladenburg's fourth claim alleges that IDS obtained the Release by committing fraud in the inducement. Ladenburg's fifth claim alleges that the same conduct constitutes fraudulent concealment. Ladenburg further alleges that as a result of IDS's fraud, Ladenburg "has been damaged in the amount of at least $1,520,000, which amount represents the cash fee, warrant coverage, and non-accountable expenses to which [Ladenburg] was entitled under the First and Second Placement Agreements." (Compl.¶¶ 50, 58.) IDS

seeks dismissal of Ladenburg's claims for fraud on the ground that Ladenburg failed to (i) rescind the Release, (ii) state the *prima facie* case of fraud, and (iii) plead fraud with particularity.

### 1. *Failure to Seek Rescission of the Release*

As discussed above, Ladenburg has alleged fraud in the inducement of the Release. Accordingly, the Court is not persuaded that the Release operates to bar any of Ladenburg's claims arising out of the First or Second Agreement.

### 2. *Failure to State the Prima Facie Case*

■ Under New York law, a fraud claim is precluded where it relates to a breach of contract. *See R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.,* 811 F.Supp. 986, 992 (S.D.N.Y.1993) (citing *Tesoro Petroleum Corporation v. Holborn Oil Company Ltd.,* 108 A.D.2d 607, 484 N.Y.S.2d 834, 835 (1st Dep't 1985)). If both claims are alleged, a court must determine whether a party has alleged the fraud claim as sufficiently extraneous and collateral to the contract claim. *See id.* In making such a determination, a court should consider the source of damages alleged. *See id.* A court should also consider whether the pleader identified a violation of a duty apart from the duty to perform under the contract. *See Tesoro,* 484 N.Y.S.2d at 835.

■ Ladenburg asserts that it has identified a violation of a duty, apart from the contractual duty to perform, and that it has alleged some damages. The separate duty alleged by Ladenburg is a duty to disclose based on IDS's alleged possession of superior knowledge of material fact and awareness that Ladenburg was acting on the basis of mistaken knowledge. *See Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1483 (2d Cir.1995) (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984)). However, that allegation is insufficient to persuade the Court that the two claims are distinct. The same operative facts give rise to both causes of action. Moreover, the harm Ladenburg suffered appears to be the same damages it attributes to the alleged breach of the First and Second Agreements. Accordingly, the Court finds that Ladenburg has not made a sufficient showing that its fraud claims are not redundant of its breach of contract claims.

### 3. *Failure to Plead Fraud with Particularity*

Allegations of fraud must be pled with particularity. *See* Fed.R.Civ.P. 9(b). However, allegations of malice, intent, knowledge, and any other condition of a person's mind may be stated generally. *See id.* Regardless of the question of how precisely Ladenburg pleaded fraud,[3] as explained in section II.C.2, its reliance on

---

**3.** An allegation of fraud is pled with sufficient particularity where the pleader has specified the allegedly fraudulent statement, identified the speaker, stated where and when the statement was made, and explained why it was fraudulent. *See Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 84 (2d Cir.1999) (citations omitted); *see also* Fed.R.Civ.P. 9(b). By attaching the Revocation Letter to the complaint, Ladenburg's pleadings set forth specific allegations that: on or about May 23–31, 2000(1) Grable knew that a market overhang of IDS securities no longer existed; (2) Ladenburg representatives informed Grable that Ladenburg was making decisions on the basis that there remained a market overhang; (3) Grable did not correct Ladenburg's mistake of fact; (4) Grable induced Ladenburg to execute the Release; and (5) Ladenburg would not have executed the Release agreement but for its mistake of fact. These allegations are sufficiently specific under Rule 9(b). *See* Section II.B.

contract damages in a fraud claim warrants dismissal for failure to state a claim.

### D. *MOTION TO STRIKE PUNITIVE DAMAGES*

 IDS moves to strike Ladenburg's request for punitive damages on the grounds that Ladenburg has made no allegations that might support an award of punitive damages under theories of breach of contract or fraud. As the applicable standard was articulated in *Lovely Peoples Fashion, Inc. v. Magna Fabrics*, No. 95 Civ. 8450, 1998 WL 422482, at *8 (S.D.N.Y. July 22, 1998), a case relied upon by both parties, to be awarded punitive damages for breach of contract, a party must show that: such damages are necessary to vindicate a public right; the misconduct is egregious and may be characterized as "gross" and "morally reprehensible"; or the misconduct involves "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id.* (citations omitted). In this Court's assessment of the pleadings, Ladenburg has not identified a public right, or egregious conduct so severe to be characterized as gross and morally reprehensible or wantonly dishonest.

 Similarly, under New York law, punitive damages are not available in an ordinary fraud case. *See id.* To be awarded punitive damages for fraud, a party must demonstrate that the fraud involved egregious conduct, directed not only at the plaintiff but also at the public at large. *See id.* Ladenburg has alleged no public wrong or injury sufficient under this test. Accordingly, IDS's motion to strike Ladenburg's request for punitive damages is granted.

### III. *CONCLUSION*

For the reasons set forth above, it is hereby

**ORDERED** that defendant Imaging Diagnostic Systems, Inc.'s motion to dismiss pursuant to 12(b)(6) is **DENIED** as to plaintiff Ladenburg Thalmann & Co., Inc.'s First, Second and Third Claims; and it is further

**ORDERED** that defendant Imaging Diagnostic Systems, Inc.'s motion to dismiss pursuant to 12(b)(6) is **GRANTED**, with leave to replead within twenty (20) days of the date of this Decision and Order, as to plaintiff Ladenburg Thalmann & Co., Inc.'s Fourth and Fifth Claims; and it is finally

**ORDERED** that defendant Imaging Diagnostic Systems, Inc.'s motion to strike plaintiff Ladenburg Thalmann & Co., Inc.'s punitive damages is **GRANTED**.

**SO ORDERED.**